IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
          Plaintiff,

vs.   No. 19-CR-1086 MV

EVERARDO GARCIA-GUZMAN,
          Defendant.

**DEFENDANT EVERARDO GARCIA-GUZMAN'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS AND MEMORANDUM IN SUPPORT THEREOF**

COMES NOW, Everardo Garcia-Guzman, by and through his counsel of record, Erlinda O. Johnson, Esq., and hereby respectfully submits the following reply to the government's response to defendant's motion to suppress all evidence seized from his person and his personal belongings on March 13, 2019. As grounds, defendant Garcia-Guzman submits the following reply:

> *The Patdown Search of Mr. Garcia-Guzman's Person in the Roomette*
> *was not the Result of Voluntary Consent but Rather an Unlawful Seizure*

A consensual encounter is simply the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement official. *United States v. Guerrero-Espinoza,* 462 F.3d 1302, 1308 (10th Cir. 2006) (quoting *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999)). However, the government bears the burden of establishing voluntary consent, and this "burden cannot be discharged by showing no more than acquiescence to a claim of authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968); *Kaupp v. Texas*, 538 U.S. 626 (2003).

Courts apply a "two-part test for determining the validity of a consent search. Under this test, the government must: (1) proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given; and (2) prove that this consent was given without implied or express duress or coercion." *United States v. Taverna*, 348 F.3d 873, 878 (10th Cir. 2003) (citation omitted). As to the first part, the question is: did the defendant give unequivocal, specific, and intelligent consent to the search? If not, the evidence must be suppressed. If so, the court must then determine whether the defendant's consent was obtained through duress or coercion.

An unlawful detention occurs when the defendant has an "objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her own way." *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996). The Tenth Circuit has considered various factors as being relevant in its totality of the circumstances analysis, with a focus on the "coercive effect of police conduct, taken as a whole." *Id.* at 1504. Notably, a police officer's show of authority and failure to inform a bus or train passenger of the right to refuse consent rendered consent involuntary. *United States v. Guapi*, 144 F.3d 1393 (11th Cir. 1998). Also, the absence of clear words of consent to search undercuts a government claim of permissive consent.  See *United States v. Shaibu*, 920 F.2d 1423, 1426-28 (9th Cir. 1990).

Here, the government argues that Mr. Garcia gave Agent Perry unequivocal consent to search his person. However, after persistent questioning by Agent Perry and Officer Zamarron, numerous imperative requests to search either his luggage or roomette, the loud background noise and the confines of a cramped train roomette, it cannot be concluded that Mr. Garcia's response to Agent Perry's unclear request to pat down his person was voluntary and knowing. Undeniably, when Agent Perry stepped into Mr. Garcia's sleeper roomette for a second time

after having returned from the lower compartment, Agent Perry had moved in closer to Mr. Garcia.  At that point, amid loud noise, including a crying infant, Agent Perry presumably asked Mr. Garcia if he could pat him down. While the government asserts that its own interpreter could hear what Agent Perry told Mr. Garcia, Federally Court Certified Interpreter Bety Ziman was only able to hear a portion of the statement made by Agent Perry. (Exhibit A, p. 11) While Mr. Garcia responded with the word "si" (yes), it is unclear whether he was aware of exactly what he was acquiescing to. After all, Agent Perry had used his own hands to pat himself on his chest while asking Mr. Garcia a question. (*Id.*) Mr. Garcia's "yes" cannot be deemed to be unequivocal and voluntary consent to search his entire person. Instead, "yes" was merely a response to a muddled difficult-to-understand question. Even assuming Agent Perry's question was clear, Mr. Garcia's acquiescence was involuntary and coerced.

Determining whether consent was coerced "turns on whether a reasonable person would believe he was free to leave or to deny the officer's request to search." *United States v. Guerrero*, 472 F.3d 784, 790 (10th Cir. 2007). Courts consider the following non-exclusive factors:

> the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public.

*Id.; United States v. Jones,* 701 F.3d 1300 (10th Cir. 2012); *see also United States v. Thompson*, 546 F.3d 1223, 1226 (10th Cir. 2008) (additional factors); *United States v. Harrison,* 639 F.3d 1273, 1279 (10th Cir. 2011) (additional factors). Additional factors include whether a defendant is told he has the right to refuse, the defendant's education and language ability, and the nature of

the questioning. This determination is based on a totality of the circumstances, and no one factor is dispositive. *Thompson*, 546 F.3d at 1226.

In this case, a careful analysis of the foregoing factors leads to the inescapable conclusion that while Agent Perry's tone appeared to be respectful, the message conveyed, including his physically intimidating presence, would lead a reasonable person to believe he had no choice but to acquiesce.

1. **Location**. First of all, the search of Mr. Garcia's person occurred in the cramped confines of a train roomette, with a second officer standing within a couple of feet of Mr. Garcia. Whether an individual is in an open public place where he is within the view of persons other than law enforcement officers is relevant to the analysis of whether or not Mr. Garcia's positive response to Agent Perry's question about patting him down was voluntary.

2. **Number, clothing, demeanor, weapons, tone of voice, and conduct of agents;** The evidence will show that for nearly the entire encounter, Mr. Garcia was flanked by two police officers asking rapid fire questions. While the officers were in plain clothes, there was no doubt in Mr. Garcia's mind, they were armed law enforcement officers. At all times, including when he was in the hallway, Mr. Garcia was physically contained between the two agents. Indeed, while Agent Perry's tone of voice does not appear aggressive, the rapid fire, persistent and hard-to-comprehend manner of questioning left little room to decline to answer his questions.

3. **Advisement of rights**. Agent Perry did not advise Mr. Garcia, during his multiple conversations, of his right to refuse to answer the agent's questions or that he had the right to leave the encounter. While there is no per se requirement of such an advisement, *United States v.*

*Little*, 18 F.3d 1499, 1505 (10th Cir. 1994), it is a factor for the Court to consider in its totality analysis.

    4. **Mr. Garcia's Education and Language Skills.** The evidence will demonstrate that Mr. Garcia is a Mexican national who has lived in Mexico his entire life. He has little education and culturally was raised to acquiesce to police authority. Indisputably, Mr. Garcia does not speak any English and had difficulty understanding Agent Perry's limited Spanish. While the subjective beliefs of the defendant are not determinative, the Court must consider them in determining the voluntariness of defendant's consent. *See United States v. Recalde*, 761 F.2d 1448, 1454 (10th Cir. 1985), overruled in part on other grounds.

    Here, after numerous questions by the agents, a trip to the luggage compartment, a second encounter inside the roomette and a request to view Mr. Garcia's ticket, Agent Perry asked Mr. Garcia if he could pat down his person. The defense disputes that the audio clearly indicates Agent Perry asked Mr. Garcia if he could search his person. In fact, Mr. Garcia submits that he did not hear Agent Perry ask him if he could search his person but rather focused on Agent Perry's physical demonstration of patting his chest with his hands. Believing that he had no other choice but to acquiesce to have Agent Perry pat his chest area, Mr. Garcia responded with a meek "si" (yes). However, Agent Perry failed to clarify whether Mr. Garcia was indeed consenting to a search of his person.  Instead, the agent proceeded to search Mr. Garcia's person and to unzip his jacket.  Standing immediately to the other side of Mr. Garcia during this time was Officer Zamarron.  Clearly, Mr. Garcia's will had been overborne and the sheepish "yes" response was the physical manifestation of his overborne will.  Therefore, the search of his person was not consensual but rather the product of an unlawful seizure. "[A]s a general rule any

evidence obtained as a result of [an unlawful] detention must be excluded as fruit of the poisonous tree." *United States v. Santana-Garcia*, 264 F.3d 1188, 1191 (10th Cir. 2001).

### *Agent Perry Lacked Probable Cause to Arrest Mr. Garcia*

In *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 2135 (1993), the Supreme Court adopted the "plain-feel" or "plain-touch" doctrine. However, the incriminating character of an item must be immediately apparent; otherwise, an officer would be engaging in a search outside the confines of the "plain-touch" doctrine. *See id.* at 374-75, 113 S.Ct. at 2138–39 (holding that the search of a suspect's pocket was not constitutionally valid under the "plain-touch" doctrine where "the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket' "). Furthermore, before actually seizing an item, the officer must have probable cause to believe that it is contraband. *Id.*

Before applying the plain-view or plain-feel doctrines, three elements must be met for contraband to be seized: (1) the police must be in a lawful position from which they view (or feel) the object; (2) the object's incriminating nature must be immediately apparent; and (3) the officers must have a lawful right of access to the object. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130 (1993). To give rise to probable cause, the incriminating character of the object must be immediately identifiable. *Id.* at 376, 113 S.Ct. 2130. That is to say, the object must be one "whose contour or mass makes its identity immediately apparent." *Id.*

Here, Mr. Garcia submits that the plain feel or plain touch doctrine does not apply for several reasons. First, Agent Perry was not a in a lawful position from which to feel the cylindrical object on Mr. Garcia's waist line as Agent Perry had not received unequivocal consent from Mr. Garcia to search his person, particularly the area below his waist. Accordingly,

the Court's analysis under the plain feel doctrine must end and the evidence seized from Mr. Garcia suppressed. Indeed, touching a bulge in the defendant's clothing without consent, and in the absence of reasonable suspicion, violates a defendant's Fourth Amendment rights. *United States v. Eustaquio,* 198 F.3d 1068, 1070 (8th Cir.1999).

Alternatively, should the court find Mr. Garcia's consent to a search of his person was unequivocal, knowing and voluntary, the plain feel doctrine still does not apply as the incriminating nature of the cylindrical object on Mr. Garcia's person was not immediately apparent. In assessing whether an object's incriminatory nature is immediately apparent, the court must "look to three factors, none of which is necessary but each of which is instructive." *Id*. These factors are:

> (1) a nexus between the seized object and the [suspected criminal activity]; (2) whether the intrinsic nature or appearance of the seized object gives probable cause to believe that it is associated with criminal activity; and (3) whether the executing officers can at the time of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature.

*United States v. Garcia*, 496 F.3d 495, 510 (6th Cir. 2007) (quotations and citations omitted); *see also United States v. Chandler*, 437 Fed.Appx. 420, 427–28 (6th Cir. 2011).

When Agent Perry searched Mr. Garcia's midsection, he felt a hard-cylindrical object. While the government argues that immediately upon touch, Agent Perry knew the object he felt was contraband, this representation is flawed as there are a number of objects a person may have on their body that are of a hard surface and cylindrical in shape, particularly medical objects. Accordingly, the objects on Mr. Garcia's person indeed are susceptible to innocent interpretations. Agent Perry feel of a hard object was just that and nothing more. That alone, is insufficient to render the object's incriminating nature immediately apparent. Accordingly, the plain feel doctrine is inapplicable.

Indeed, to find probable cause to make a warrantless arrest, the facts and circumstances within the officers' knowledge must be sufficient to justify a reasonably prudent person's belief that the suspect has committed or is committing an offense. *United States v. Morgan*, 997 F.2d 433, 435 (8th Cir. 1993). It is established law that "the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention. *Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995). Courts have previously held that a bare allegation of wrongdoing, without any investigation, in some circumstances, may not give rise to probable cause. *Cortez v. McCaulley*, 478 F.3d 1108 (10th Cir. 2007); *Baptiste v. J.C. Penny*, 147 F.3d 1252 (10th Cir. 1998).

In *Baptiste,* the Tenth Circuit affirmed the denial of qualified immunity for officers who relied solely on the statements of store security guards—despite having seen a contradictory security videotape capturing the events in question—to establish probable cause for arrest. *Id.* at 1254. Reduced to its essence, "probable cause is a reasonable ground for belief of guilt." *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795 (2003).

The facts in *United States v. Henry*, 361 U.S. 98, 103 (1959), are also instructive to the instant case, in that the police in *Henry*, like here, made a warrantless arrest after observing the defendant engaged in outwardly innocent acts. As the Court stated in *Henry,* ..." an arrest is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen. It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to an easy arrest." 361 U.S. at 104. When Agent Perry touched a hard-cylindrical object on Mr. Garcia's person perhaps he had hunches but very little corroboration. His arrest of Mr. Garcia was not supported by probable cause and thus any

8

fruits therefrom, must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407 (1963).

   Wherefore, for the foregoing reasons and the reasons set forth in Mr. Garcia's motion to suppress evidence, Mr. Garcia respectfully requests this Court suppress all evidence seized from him on March 13, 2019, as violative of the Fourth Amendment to the United States Constitution.

               Respectfully Submitted,

               <u>electronically filed 7/17/19</u>
               Erlinda O. Johnson
               Counsel for Everardo Garcia-Guzman
               620 Roma Ave. N.W.
               Albuquerque, NM 87102

I hereby certify that a true and correct
Copy of the foregoing was provided
To AUSA Mark Pfizenmayer, on this 17th
Day of July, 2019.

   /s/
Erlinda O. Johnson
Attorney at Law